UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| GENENTECH, INC., | Case No.: C 10-02037 LHK (PSG) |
| Plaintiff, | **ORDER GRANTING-IN-PART DEFENDANT'S MOTION TO COMPEL** |
| v. | |
| THE TRUSTEES OF THE UNIVERSITY OF PENNSYLVANIA, | **(Re: Docket No. 118)** |
| Defendant. | |

Pending before the court is Defendant The Trustees of the University of Pennsylvania's ("Penn") motion to compel has Plaintiff Genentech, Inc. ("Genentech") to produce all documents responsive to Penn's request for production no. 29. Specifically Penn seeks "all studies, experiments, data, and related documents relating to the mechanism of action of Herceptin, including antibody 4D5 and variants thereof, in cells originating from the breast that overexpress p185."[1] For the reasons below, Penn's motion is GRANTED-IN-PART and DENIED-IN-PART.

**I. BACKGROUND**

On July 26, 2010, Penn served Genentech with Penn's request for production no. 29, which requests:

---

[1] 6/2/11 Penn's Motion to Compel Production of Documents (Docket No. 249) ("Motion") at 2:19-21.

1

Case No.: 10-2037
ORDER

DOCUMENTS sufficient to describe the results of all studies or experiments, or analysis of data, RELATED TO the mechanism of action of TRASTUZUMAB, PERTUZUMAB, the antibodies designated as 4C8, 3E8, 3H4, 7.16.4, 7.5.5, 7.9.5, 7.21.2, or any other antibodies that bind to HER2, neu, or p185.[2]

On September 17, 2010, in a letter to Penn, Genentech maintained that it would not produce records about Pertuzumab but agreed to "search for and produce non-privileged documents in its possession and responsive to these request as it relates to Herceptin, 7.16.4, 7.5.5, 7.9.5, or 7.21.2 and to the extent that they exist and can be located after a reasonable search."[3]  On September 21, 2010, Genentech further agreed to produce documents that were produced in a prior action, *Chiron Corp. v. Genentech, Inc.,* CIV S-00-1252 WBS GGH (E.D. Cal.) (the "Chiron litigation:"), and to "perform a reasonable search for the time period subsequent to the collection done for the Chiron litigation to determine whether additional responsive documents exist."[4]

Genentech declares that it has produced over one million pages of responsive documents—including scientific publications, patents and patent applications, traning materials, laboratory notebooks, regulatory submissions including five entire Biologics License Applications ("BLA"s), and internal memos and presentations—reflecting research, development, testing, and clinical studies of Herceptin and Herceptin's predecessor (the murine 4D5 antibody).[5]  Genentech has also produced the Chiron litigation files on a rolling basis, which includes laboratory notebooks, scientific publications, meeting minutes, internal development memos, regulatory and patent filings for both Herceptin and murine 4D5.  Genentech also produced documents relating to experiments conducted with the 7.16.4 antibody.

---

[2] 2/22/11 Declaration of C. Maclain Wells in Support of Penn's Motion To Compel (Docket No. 118-1) ("Wells Decl.") Ex. 1 (Docket No. 118-3) at 10:23-27.

[3] Wells Decl. Ex. 6 (Docket No. 118-8) at 4.

[4] Wells Decl. Ex. 7 (Docket No. 118-9) at 5.

[5] *See* 3/8/11 Declaration of Tashica Williams in Support of Genentech's Opposition to Penn's Motion To Compel (Docket No. 144-3) ("Williams Decl.").

2
Case No.: 10-2037
ORDER

Penn contends this production is incomplete and, on February 22, 2011 filed this motion to compel. The parties appeared for oral argument on March 29, 2011. Judge Koh issued her claims construction order on May 9, 2011. On May 17, 2011, the parties submitted supplemental briefing on this motion to compel in light of the claims construction order.

## II. LEGAL STANDARDS

Pursuant to Fed. R. Civ. P. 26, parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence. The court must limit the frequency or extent of discovery if it is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, or the burden or expense of the proposed discovery outweighs its likely benefit.

## III. DISCUSSION

The parties dispute (1) what types of documents or efforts to locate documents are required, (2) what categories of information relate to the mechanism of action, (3) what antibodies are relevant, and (4) what cells on which the antibodies act are relevant. The court addresses each of these disputes by addressing whether the relief sought is within the scope of request for production no. 29 and is relevant, non-privileged, and not unduly burdensome to produce.

**A. "ALL STUDIES, EXPERIMENTS, DATA, AND RELATED DOCUMENTS"**

Genentech notes that request for production no. 29 only seeks "*DOCUMENTS sufficient to describe* the results of all studies or experiments, or analysis of data, RELATED to the mechanism of action" (emphasis added) of the multiple antibodies listed in the request. Genentech contends that it has already produced documents sufficient to do so for Herceptin and 4D5, including all the records it found after a reasonable search of experiments and data that underlie the Finkle et al., Clin. Cancer Res. (2004) 10:2499-2511 ("Finkle publication"), and the administration of 4D5 to

3

Case No.: 10-2037
ORDER

the transgenic mouse. Included in this production were laboratory notebooks and records relating to the experiments and results of 4D5 administration to the transgenic mice. Genentech further argues that it has not withheld anything from production that it knows relates to the mechanism of action of Herceptin or the 4D5 antibody.

Genentech declares it has identified more than one hundred individuals who likely would have laboratory notebooks and might have recorded experiments relating to Herceptin or 4D5 antibodies, many of whom are no longer at Genentech. Genentech has also identified over 200 Genentech scientists who have authored publications pertaining to Herceptin or 4D5 since 1990, who may have additional data or notebooks. Genentech contends that the only action it has not undertaken—strictly because of the expense and drain in dedicating resources to the review task— is to retrieve and review these countless laboratory notebooks and raw data that might provide information beyond the documents it already has produced. Genentech argues that attempting to identify information about any experiment with an anti-p185 antibody, Herceptin or 4D5 in the many handwritten notebooks of these individuals would be extremely time consuming and serve as a significant business distraction.

Penn argues that despite the large volume of Genentech's production, Genentech has not made a reasonable search for other documents. Penn notes that Genentech fails to represent that it has done the following: checked the email records of its lead researchers for internal studies or presentations, interviewed researchers to determine what studies were performed, spoken with its scientists who conduct research on the 4D5 antibody family, searched for experiments after the production in the Chiron litigation regarding the mechanisms of action of the 4D5 antibody,[6]

---

[6] Penn notes that the Chiron litigation ended in 2002, and Genentech did not apply to the FDA for approval for adjuvant treatment until 2006. Thus, Penn argues, many of its studies, as well as much of its requested internal "analysis of data," would have taken place after the Chiron litigation concluded.

4

Case No.: 10-2037
ORDER

searched for summary documents in the form of internal presentations, summaries, and reports, or keyword searched electronically-stored documents.  Penn also argues that while Genentech produced the published Finkle paper, it produced no internal analyses of the resulting data, or of whatever data and analysis prompted Genentech to invest in conducting this expensive study.

The court finds that Penn's motion to compel "all studies, experiments, data, and related documents related to the mechanism of action" includes documents outside the scope of request for production no. 29.  Request for production no. 29 is narrower and requires Genentech to produce only "documents *sufficient to describe* the results of *all* studies or experiments, or analysis of data related to the mechanism of action."  For example, under request for production no. 29, Genentech need not provide all data or documents relating to a relevant data analysis; Genentech, however, does need to produce documents sufficient to describe the results of that analysis, regardless of whether those results were published.

Regarding Genentech's efforts to locate additional documents, the court finds Penn's suggestions for undertaking a search, listed above, to be reasonable.  Genentech shall perform a reasonable search, including these suggested measures, for documents sufficient to describe the results of all studies or experiments, or analysis of data that fall within the parameters discussed below.  If any such documents cannot be located through a reasonable search, then Genentech need not produce them.

B.  "RELATING TO THE MECHANISM OF ACTION"

Penn argues that request for production no. 29 includes documents pertaining to the following issues:

    1.    Whether Herceptin competes with 7.16.4 for binding to any p185 receptor
    2.    Whether Herceptin acts on cells that overexpress HER2 but do not exhibit one or both of the properties of uncontrolled growth and invasiveness, including mammary epithelial cells, and including cells at locations outside of the breast
    3.    Whether Herceptin administration results in the following effects:
        a.    continuous suppression of HER2 activity

   b. constant inhibition of the HER2 receptor
   c. internalization, degradation, recycling, or trafficking of the HER2 receptor
   d. preventing formation of p95HER2
   e. disruption of ligand-independent HER2/HER3 association or HER2 signaling
   f. inhibiting HER2-mediated angiogenesis
   g. interference with signal transduction pathways
   h. impairment of extracellular domain cleavage
   i. inhibition of DNA repair
   j. induction of cell cycle arrest or cell stasis

Genentech argues that this list of topics is a revision of the discovery request, vague, ambiguious, and overbroad. With respect to issue no. 1, Genentech also argues that it has already produced the documents and has not located any competition experiments between 7.16.4 and Herceptin. With respect to issue no. 2, Genentech argues it has produced the documents underlying the Finkle mouse experiments using 4D5 but has not located any documents showing that Herceptin acts on non-cancer cells. With respect to issue no. 3, Genentech argues it has already produced the scientific publications relating to whether Herceptin "down-regulates" p185.

The court finds that issue no. 1 is clearly relevant to Penn's infringement contentions regarding claim 1 of the '752 patent[7] and is related to the mechanism of action. Issue no. 2 will be addressed below in section D regarding the relevant cells upon which Herceptin acts. In light of Judge Koh's claim construction order adopting Penn's construction of the term "to down regulate the overexpressed p185"[8] and Penn's infringement contentions specifically listing all of the above recited effects,[9] issue no. 3 is relevant and related to the mechanism of action.

---

[7] *See* Penn's Second Revised Infringement Contentions, Wells Decl. Ex. 15 (Docket No. 118-17) ("Penn's Infringement Contentions") at 2.

[8] *See* 5/9/11 Order Construing Disputed Claim Terms of U.S. Patent No. 7,733,752 (Docket No. 214) ("Order Construing Disputed Claim Terms") at 19 ("[T]he Court adopts U Penn's construction of this term, with the additional limitation that 'down regulate' cannot encompass ADCC/CDC. The court construes 'to down regulate the overexpressed p185' to mean 'to decrease the ability of the overexpressed p185 receptors to participate in their function, by means other than antibody dependent cellular cytotoxicity (ADCC) or complement-mediated cytotoxicity (CDC).'").

6

Case No.: 10-2037
ORDER

C.  "OF HERCEPTIN, INCLUDING ANTIBODY 4D5 AND VARIANTS THEREOF"

Although request for production no. 29 requests information about a number of antibodies, Penn's motion to compel only seeks information about Herceptin, antibody 4D5, and variants of antibody 4D5.[10]

Penn offers two arguments that the entire "4D5 family" of antibodies are relevant. First, Penn argues that the asserted claims of the '752 patent are not limited to Herceptin. The claims cover certain "antibod[ies] ... for binding to p185," and therefore on their face could include all members of the 4D5 family.[11] Second, Genentech itself uses other antibodies in the 4D5 family to elucidate the mechanisms of action of Herceptin, and it is for the parties' experts to determine whether the outcome from one study regarding one member of the 4D5 family can be extrapolated to Herceptin.

Genentech argues that Penn has not demonstrated how non-Herceptin or non-4D5 antibodies, including variants and fragments of murine 4D5 and its seven humanized variants, are relevant to this action, nor has it provided evidence that the documents Genentech has provided

---

[9] *See* Penn's Infringement Contentions at 2-3. The only effect not listed verbatim in the infringement contentions is "internalization, degradation, recycling, or trafficking of the HER2 receptor," but this effect is included in Penn's statement that its "contentions include all results that occur when Trastuzumab binds to HER2 that decrease the ability of the overexpressed HER2 receptors to participate in their function." *Id*. at 2.

[10] Request for production no. 29 includes Trastuzumab, which is defined in the First Set of Requests for Production of Documents as:
> "the antibody marketed under the brand name 'Herceptin,' the antibody designated by Genentech as 4D5, any antibody (including any fragment) that binds to the same epitope, multimeric versions of the foregoing, or combinations of the foregoing with another molecule or compound (e.g., a radioisotope or cytotoxic agent)."
> Wells Decl. Ex. 1 ¶ 14.

Thus, Herceptin, antibody 4D5, and variants of antibody 4D5 are within the scope of request for production no. 29.

[11] See 3/15/11 Penn's Reply in Support of the Motion To Compel (Docket No. 151) ("Reply") at 9:9-11.

about Herceptin, 4D5, and 7.16.4 are insufficient for it to prepare to try the claims it has asserted. Furthermore, one cannot extrapolate from data concerning a different antibody anything conclusive about Herceptin. Rather, Genentech argues, Penn's request is a fishing expedition into research regarding different antibodies in different stages of development, whose mechanism of action may be unrelated to that of Herceptin. Genentech argues that Penn has not justified requiring Genentech to undertake the burden of producing data and information for products not directly accused of infringement.

Penn has demonstrated that in Genentech's 1992 Investigational New Drug Application ("IND") for a Recombinant Humanized Anti-p185$^{HER2}$ Monoclonal Antibody (rhuMAB HER2 or Herceptin), Genentech cited studies conducted with other murine monoclonal antibodies directed against p185$^{HER2}$ as "support[ing] the therapeutic role for anti-p185$^{HER2}$ monoclonal antibodies in humans with tumors that overexpress p185$^{HER2}$." This IND also references *in vitro* efficacy studies on other humanized versions of murine 4D5, several of which "showed comparable anti-proliferative activity" to the murine 4D5 antibody.[12] Because Genentech itself has relied upon such information to elucidate Herceptin's effect, Penn has established that the discovery of information about the mechanism of action of the antibodies cited in Genentech's IND, in addition to Herceptin and murine 4D5, is appropriate.

Penn, however, has not shown that other antibodies are relevant. Although Penn argues the patent claims *could* include all members of the 4D5 family, Penn has not accused these antibodies

---

[12] *See* Wells Decl. Ex. 14 (Docket No. 249-1) at 10-11; 3/15/11 Declaration of C. Maclain Wells in Support of Penn's Reply (Docket No. 151-1) ("Wells Reply Decl.") Ex. D (Docket No. 271). The court notes that the IND argued these findings supported the clinical application of Herceptin for therapy of human cancers, not for the application of Herceptin on non-cancer cells.

8

Case No.: 10-2037
ORDER

of infringement and has only "accus[ed] of infringement the administration of Trastuzumab also known as Herceptin."[13]

### D. "IN CELLS ORIGINATING FROM THE BREAST THAT OVEREXPRESS p185"

Genentech argues that Penn may not seek documents pertaining to Genentech's experiments performed on cancer cells because the '752 patent is about preventing breast cells from becoming breast cancer cells, not about treating cancer cells. Additionally, Genentech claims that requiring Genentech to find and produce such a broad array of cancer research materials—most of which do not discuss the mechanism of action of Herceptin—would be burdensome and costly. Genentech further argues that the only specific example of documents that Penn contends should have been produced but were withheld are documents regarding studies conducted after the Finkle publication on tumors explanted from the Finkle mice. Genentech contends these documents were properly withheld because they deal with cancer cells and are therefore not relevant to this action.

Penn argues that Genentech has inappropriately applied a broad definition of cancer and has limited discovery accordingly. Penn argues that its motion to compel seeks documents related to experiments on a neutral category of cells and documents that describe the classes of cells on which Herceptin acts, in order to allow Penn to make its own determination about whether the antibodies are acting on non-cancer cells and to prevent definitional games about what is and is not cancer from limiting relevant discovery.

---

[13] Motion at 2:7-8 (citing Penn's Infringement Contentions at 2) (internal punctuation omitted); s*ee* 4/411 Transcript of Proceedings held on 03/29/2011(Docket No. 172) at 17:7-13 (The Court: "Can you confirm for me, [Trastuzumab] DM1 isn't in your infringement contentions, right?" Mr. Wells: "Correct, Your Honor. We have not separately accused all of the conjugates of infringement. . ."); *Id*. at 26:9-16 (The Court: "Are you accusing [Trastuzumab DM1] of infringement or not?" . . . Mr. Sheasby: "The Trastuzumab DM1 is under the FDA Safe Harbor. You can't accuse it of infringement.").

Claim 1 of patent '752 claims a "method of inhibiting development into breast cancer cells of breast cells that overexpress p185."[14] Judge Koh has defined "breast cancer cells" as "cells from the breast that have malignant form and structure, the ability for uncontrolled growth, and the potential or ability to invade or metastasize."[15] Judge Koh construed "breast cells that overexpress p185" to mean "cells, the origin of which is breast tissue, that overexpress p185 and are not breast cancer cells."[16]

In light of the plain language of the claim, let alone Judge Koh's constructions, the burden of discovery relating to studies on cancer cells, which are outside the scope of the patent claims, clearly outweighs its likely benefit. Accordingly, if any cells originating from the breast that overexpress p185 have (1) malignant form and structure, (2) the ability for uncontrolled growth, and (3) the potential or ability to invade or metastasize, Genentech can properly withhold otherwise relevant documents pertaining to those cells. Genentech, however, must produce documents pertaining to cells that lack any one of those three characteristics.

## IV. CONCLUSION

IT IS HEREBY ORDERED that Penn's motion to compel is GRANTED-IN-PART. Genentech shall conduct a reasonable search, including checking the email records of its lead researchers for internal studies or presentations, interviewing researchers to determine what studies were performed, speaking with its scientists who conduct research on the antibodies specified below, searching for experiments after the production in the Chiron litigation regarding the mechanisms of action of the 4D5 antibody, searching for summary documents in the form of internal presentations, summaries, and reports, and searching for keywords in electronically-stored

---

[14] Penn's Infringement Contentions at 2.

[15] Order Construing Disputed Claim Terms at 10:4-6.

[16] *Id.* at 12:9-10.

documents. Through this search, Genentech shall seek to locate documents *sufficient to describe* the results of *all* studies or experiments, or analysis of data related to the mechanism of action—specifically, competition with 7.16.4 for binding to any p185 receptor and specific effects on the cell[17]— of Herceptin, as well as the murine 4D5 antibody and other antibodies that Genentech cited in its 1992 IND as having an effect similar to Herceptin, in cells originating from the breast that overexpress p185 and do not have either (1) malignant form and structure, (2) the ability for uncontrolled growth, or (3) the potential or ability to invade or metastasize.

IT IS FURTHER ORDERED that if Genentech has already completed such a search and produced the located documents or is unable to do so, Genentech shall stipulate as much in writing to Penn.

IT IS FURTHER ORDERED that Genentech shall comply with this order no later than July 15, 2011.

Dated:  June 16, 2011

_____
PAUL S. GREWAL
United States Magistrate Judge

---

[17] These effects, as listed elsewhere in this order, are: continuous suppression of HER2 activity; constant inhibition of the HER2 receptor; internalization, degradation, recycling, or trafficking of the HER2 receptor; preventing formation of p95HER2; disruption of ligand-independent HER2/HER3 association or HER2 signaling; inhibiting HER2-mediated angiogenesis; interference with signal transduction pathways; impairment of extracellular domain cleavage; inhibition of DNA repair; and induction of cell cycle arrest or cell stasis.