1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**United States District Court**
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| GENENTECH, INC., <br><br> Plaintiff, <br><br> v. <br><br> THE TRUSTEES OF THE UNIVERSITY OF PENNSYLVANIA, <br><br> Defendant. | Case No.: C 10-2037 LHK (PSG) <br><br> **ORDER GRANTING-IN-PART AND DENYING-IN-PART GENENTECH'S MOTION TO AMEND INVALIDITY CONTENTIONS** <br><br> **(Re: Docket No. 277)** |

Before the court is Plaintiff Genentech, Inc.'s ("Genentech") motion to amend its invalidity contentions. Defendant The Trustees of the University of Pennsylvania ("Penn") opposes only two proposed amendments, which are not supported by any difference between the claim construction issued by the presiding judge and proposed by Genentech. For the reasons below, Genentech's motion to amend is GRANTED-IN-PART and DENIED-IN-PART.

## I. LEGAL STANDARDS

Genentech may supplement its invalidity contentions upon a timely showing of "good cause."[1] Good cause is supported by, among other things, "a claim construction by the Court different from that proposed by the [moving] party" and the "recent discovery of nonpublic

_____

[1] Patent L.R. 3-6.

Case No.: 10-2037
ORDER

information … which was not discovered despite diligent efforts."[2]  This approach allows courts to "balance the right to develop new information in discovery with the need for certainty as to the legal theories."[3]  Whether good cause has been established is within the sound discretion of the trial court.[4]  In determining whether there is good cause, the court "considers first whether the moving party was diligent in amending its contentions and then whether the non-moving part would suffer prejudice if the motion to amend were granted."[5]

## II. DISCUSSION

Penn opposes only the two proposed amendments related to Genentech's written description and enablement defenses: (1) Genentech's claim that, contrary to the sweeping representation in the '752 patent that "6 of 12 mice" (50%) receiving a high dose treatment using Penn's 7.16.4 antibody "remained free of tumors at more than 90 weeks of age," this reported efficacy data was false; and (2) Genentech's claim that despite their representation to the PTO that the data in the '752 patent show "in sufficient amount to down-regulation," the inventors conducted additional and different experiments using different dosage schemes to show down-regulation, because peer scientists in the field had rejected their claim of down-regulation based on the original data.

Genentech argues that it only discovered these facts through documents and interrogatory responses produced by Penn and inventor Katsumata's deposition.  Genentech further argues that Penn has repeatedly claimed that there may be other mice or documentation to support the patent's

---

[2] *Id.*

[3] *Golden Hour Data Systems, Inc. v. Health Services Integration, Inc.*, No. C 06-7477 SI, 2008 WL 2622794, at *2 (N.D. Cal. Jul. 1, 2008) (citing *O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1366 (Fed. Cir. 2006)).

[4] *See Vasudevan Software, Inc. v. International Business Machines Corp.*, No. C09-05897 RS (HRL), 2011 WL 940263, at *1 (N.D. Cal. Feb. 18, 2011).

[5] *Acer, Inc. v. Tec. Props. Ltd.*, 2010 WL 3618687, at *3 (N.D. Cal. Sep. 10, 2010).

Case No.: 10-2037
ORDER

United States District Court
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

data, and Genentech diligently sought this evidence over the intervening months.  Having found no corroborating data, Genentech moves to amend its contentions to reflect these facts.  Genentech finally argues that any delay in seeking leave to add these contentions is excusable in light of the likelihood that it would have to seek leave again after the issuance of the claim construction order.

Penn responds that it produced the documents and interrogatory responses upon which Genentech bases its amended claims in Penn's Rule 3-1 disclosures on September 7, 2010, well before Genentech served its invalidity contentions.  Additionally, while the Katsumoto deposition offered the opportunity for further examination, Genentech relied on these exact same underlying documents and interrogatory responses for its March 25, 2010 Motion to File a First Amended Complaint and Answer, in which Genentech pleaded inequitable conduct on these same facts.

In view of this record, it is clear that four months ago, before Genentech filed its motion to amend its pleading to include inequitable conduct, Genentech was aware of the import of this discovery, and in particular the details of Penn's experimental data.[6]  The Federal Circuit has interpreted the "good cause" requirement under the Patent Local Rules to mandate that parties in patent cases must "proceed with diligence in amending [their infringement and invalidity contentions] when new information comes to light in the course of discovery."[7]  No exception is provided simply because a further amendment might be justified after a claim construction is issued.  Genentech's failure to seek leave to amend its invalidity contentions at or around the time it moved to add its inequitable conduct allegations falls short of this standard.  Accordingly,

IT IS HEREBY ORDERED that Genentech's motion to amend its invalidity contentions as described in Section III, second bullet point of its motion is DENIED.  As to all other proposed

---

[6] *See CBS Interactive, Inc. v. Etilize, Inc.*, 257 F.R.D. 195, 202 (N.D. Cal. 2009).

[7] *O2 Micro Intern. Ltd. v. Monolithic Power Systems, Inc.*, 467 F.3d 1355, 1366 (Fed. Cir. 2006).

Case No.: 10-2037
ORDER

amendments, as described in Section II and Section III (with the exception of the second bullet point) of its motion, Genentech's motion is GRANTED.

Dated:  July 27, 2011

_____
PAUL S. GREWAL
United States Magistrate Judge

Case No.: 10-2037
ORDER

United States District Court
For the Northern District of California