UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| GENENTECH, INC., | Case No.: C 10-2037 PSG |
| Plaintiff, | **ORDER GRANTING-IN-PART DEFENDANT'S MOTION TO COMPEL** |
| v. | |
| THE TRUSTEES OF THE UNIVERSITY OF PENNSYLVANIA, | **(Re: Docket No. 339)** |
| Defendant. | |

In this patent infringement suit, Defendant and Counterclaim-Plaintiff The Trustees of the University of Pennsylvania ("Penn") moves to compel Plaintiff Genentech, Inc. ("Genentech") to produce responsive documents maintained by Genentech's parent company, F. Hoffman-La Roche, Ltd. ("Roche"). Penn contends that Genentech has access to pertinent research records at Roche but is using Roche's independent status and location as a way to shield certain materials from discovery. Genentech responds that it already has produced all responsive documents in its possession and custody, and that the additional Roche documents sought by Penn are not within Genentech's control. On November 1, 2011, the parties appeared for a hearing on the pending motion. Having considered the briefs and oral arguments, the court GRANTS Penn's motion but only IN PART.

1

Case No.: CV 10-2037 PSG
ORDER GRANTING-IN-PART DEFENDANT'S MOTION TO COMPEL

## I. BACKGROUND

Under Fed. R. Civ. P. 34, Genentech's obligation to produce the documents sought by Penn turns on whether the documents are in Genentech's "possession, custody, or control."[1] The documents and data subject to this motion are not in Genentech's possession or custody; the dispositive issue therefore is whether Genentech "controls" what is requested.

Penn offers three primary arguments to establish that Genentech has such control. First, Penn argues that Genentech and Roche "operate in concert, not as autonomous or separate entities, with Roche controlling Herceptin operations."[2] Second, Penn argues that Genentech and Roche have contractually agreed to share data and materials related to their anti-HER2 work pursuant to the provisions of a 1998 Development Agreement ("the Agreement").[3] Third, Penn argues that several Genentech scientists have testified that Roche "routinely provides scientific data or information upon request."[4]

Genentech responds that it has searched for and produced all responsive data and documents from all locations of shared access or custody resulting from any concerted action.[5] These data and documents include the European regulatory filings for Herceptin initially sought by Penn as part of this motion.[6] As to Penn's remaining arguments, Genentech responds that its right to demand documents from Roche under the provisions of the Agreement is limited to regulatory

---

[1] *See* Fed. R. Civ. P. 34(a) ("A party may serve on any other party a request within the scope of Rule 26(b) to produce … items in the responding party's *possession, custody, or control*.") (emphasis added).

[2] *See* Docket No. 339 at 3 (citing deposition witness testimony, Ex. N at 374-376) (under seal).

[3] *See id.* (citing "highly confidential" agreement between Roche and Genentech, Ex. C) (under seal).

[4] *See id.*

[5] *See* Docket No. 375 at 1, 4, and n.5 (citing Wan Decl. ¶ 5) (under seal)).

[6] Penn withdrew that portion of its motion based on Genentech's representations that it had already produced the European regulatory filings concerning Herceptin. *See* Docket No. 369.

2
Case No.: CV 10-2037 PSG
ORDER GRANTING-IN-PART DEFENDANT'S MOTION TO COMPEL

filings for Herceptin outside of the U.S. – filings that Genentech already has produced.[7] Genentech further responds that Penn's references to the testimony of its scientists and purported routine sharing of data by Roche are both misleading and irrelevant, since neither establishes Genentech's legal control over the information or right to demand it.

## II. ANALYSIS

"Control is defined as the legal right to obtain documents upon demand."[8] "The party seeking production of the documents … bears the burden of proving that the opposing party has such control."[9] It is not enough that a party may have a "practical ability to obtain the requested documents" from its sister or parent organization, since the other entity "could legally – and without breaching any contract – []refuse to turn over such documents."[10]

Penn has not met its burden of proving that Genentech has the legal control required under the law in this circuit to make broad document requests to Roche. Penn relies on *Hitachi, Ltd. v. AmTRAN Tech. Co.* for the proposition that federal courts broadly interpret "control," such that the relevant question is "whether the party has the 'right, authority, or practical ability to obtain the documents from a non-party to the action.'"[11] But *Hitachi* bases much of its analysis on out-of-circuit cases and its approach does not square with Ninth Circuit precedent. In *In re Citric Acid*, the court expressly rejected a broader test for "legal control" that would have looked to a party's "practical ability to obtain the requested documents."[12]

---

[7] *See* Docket No. 375 at 3.

[8] *In re Citric Acid Litigation*, 191 F.3d 1090, 1107 (9th Cir. 1999) (quoting *United States v. Int'l Union of Petroleum & Indus. Workers*, 870 F.2d 1450, 1452 (9th Cir. 1989)).

[9] *Int'l Union of Petroleum & Indus. Workers*, 870 F.2d at 1452.

[10] *See In re Citric Acid*, 191 F.3d at 1107-08.

[11] *See* Docket No. 339 at 2 (quoting *Hitachi*, C 05-2301(JL), 2006 WL 2038248, at *2 (N.D. Cal. July 18, 2006)).

[12] *See In re Citric Acid*, 191 F.3d at 1107.

3
Case No.: CV 10-2037 PSG
ORDER GRANTING-IN-PART DEFENDANT'S MOTION TO COMPEL

Other more recent cases have followed *In re Citric Acid* by requiring a showing of "legal control" before ordering production of documents from a related organization. In *HTC Corp. v. Technology Properties*, the court found insufficient the moving party's assertion that the relationship between plaintiff and its third-party chip suppliers allowed it "to get, upon request, documents describing the chips HTC has bought from those suppliers."[13] The court ordered plaintiff "to review the agreements between HTC and its chip providers to *definitively determine* whether HTC does or does not have the legal right to obtain additional documents upon demand."[14] Similarly, in *Beilstein-Institut Zur Forderung Der Chemischen Wissenschaften v. MDL Information Sys., Inc.*, the court rejected plaintiff's argument that contractual provisions between the defendant and a sister subsidiary in Germany created an agency relationship whereby the two entities had legal rights to the documents in possession of the other.[15] Instead, the court found that the agreement in question created a "cross-sales agent relationship, not a relationship granting one company complete control over the other," which was insufficient under the standard set by *In re Citric Acid*.[16]

Neither *HTC Corp.* nor *Beilstein-Institut* involved two companies in a subsidiary-parent relationship like that between Genentech and Roche. But in *Tessera, Inc. v. Micron Technology, Inc.*, the court confronted such a circumstance, albeit in the context of a Rule 45 subpoena rather than a Rule 34 document request.[17] The plaintiff issued a subpoena seeking documents from a U.S. subsidiary that were in the Korean parent company's possession.[18] The court reviewed in detail the

---

[13] *See* C 08-00882 JF(HRL), 2011 WL 97787, at *4 (N.D. Cal. Jan. 12, 2011).

[14] *See id.* (emphasis added).

[15] *See* C 04-05368 SI, 2006 WL 3742244, at *3-4 (N.D. Cal. Dec. 19, 2006).

[16] *See id.*

[17] *See* C 06-80024MISC-JW (PVT), 2006 WL 733498 (N.D. Cal. Mar. 22, 2006).

[18] *See id.* at *4.

4
Case No.: CV 10-2037 PSG
ORDER GRANTING-IN-PART DEFENDANT'S MOTION TO COMPEL

relationship between the parent and subsidiary and found that, notwithstanding substantial overlap in joint research and development efforts, shared counsel for both companies, and nearly 97 percent ownership by the parent of the subsidiary, "there is no specific showing that [the subsidiary] has the legal right to obtain any of the documents set forth in the document requests upon demand."[19] The court thus limited the subsidiary's obligation of production to documents contained in electronic databases already in its possession or in possession of its counsel.[20]

Here, Penn similarly has not demonstrated that Genentech has the broad legal right to demand documents from Roche. Nor does the nature of the relationship between Genentech and Roche indicate that Genentech has such legal control. Testimony by several Genentech witnesses suggests that Roche may be willing to provide data on Herceptin, when requested by Genentech scientists.[21] Penn did not elicit testimony, however, that such requests are made and honored regularly. More importantly, Penn offers no evidence that Roche is obliged to hand over materials when requested. The fact that Genentech is wholly owned by Roche, and Roche controls Genentech's Herceptin operations – or has controlled those operations since May 2009 – suggests at most that Roche has the legal right to obtain documents pertaining to Genentech.[22] Penn has not shown that the converse is true.

The court agrees with Penn that the 1998 Agreement authorizes Genentech to obtain at least certain documents from Roche on demand. This authorization, however, is limited to the

---

[19] *See id.* at *6.

[20] *See id.*

[21] *See* Docket No. 339, Exs. D & E (testimony of two Genentech scientists stating they are "not aware" of instances in which Roche has denied a request for data).

[22] *See Int'l Union of Petroleum & Indus. Workers*, 870 F.2d at 1452 ("A corporation must produce documents possessed by a subsidiary that the parent corporation owns or wholly controls."). *See also Hambrecht Wine Group, L.P. v. Millennium Imp. LLC*, 2006 WL 3302428 (N.D. Cal . 2006) (noting distinction between a parent's control over a subsidiary and subsidiary's control over a parent).

5
Case No.: CV 10-2037 PSG
ORDER GRANTING-IN-PART DEFENDANT'S MOTION TO COMPEL

Agreement's data sharing provisions, which extend the reach of "free and open communication" and "sharing of data and materials" only to that relating to the development plan created by the parties,[23] which includes development of materials, including non-clinical studies and procedures, relating to the regulatory filings for obtaining regulatory approval of Anti-HER2 product(s)[24] as well as neo-adjuvant studies, adjuvant trials, and PK studies.[25]

Accordingly, to the extent that Genentech and Roche's joint development activities under the 1998 Agreement encompass any documents, research records, data, or other information responsive to Penn's requests,[26] Genentech is obligated to produce such materials. If it has not yet done so, Genentech also must provide the information offered to Penn in the August 31, 2011 written meet and confer[27] regarding (1) the classes and categories of Roche documents that Genentech has searched, and (2) what documents it has produced from those searches, including all categories implicated by Penn's 30(b)(6) deposition notice on the topic of Roche's files.[28] All other relief requested by Penn, however, is unwarranted.

---

[23] *See* Docket No. 339, Ex. C § 6.3 (under seal).

[24] *See id.* (under seal).

[25] *See id.*, Appendix A (under seal).

[26] The specific discovery requests for which Penn seeks responsive documents from Roche are (1) documents sufficient to describe all studies, experiments, and analyses related to Herceptin's mechanism of action, (2) research or analyses "tending to establish or refute that the accused cells are cancer" as defined in the court's claim construction order, as well as research "tending to establish or refute that Herceptin acts on the accused cells," and (3) production of research, analyses, or discussions regarding the 7.16.4 antibody. *See* Docket No. 339 at 2.

[27] *See* Docket No. 339, Ex. K at 4-5.

[28] Penn argues that it sought to determine the extent of Genentech's "right or ability … to obtain information, research materials, or documents" from Roche, but was unable to do so based on the largely nonresponsive testimony of Genentech's 30(b)(6) witness. In written meet and confer following the 30(b)(6) deposition on this subject, Genentech offered to provide Penn with a list of the documents it has requested from Roche and those it has produced. *See id.*, Exs. K, L.

## III. CONCLUSION

Consistent with the terms set forth herein, Penn's motion to compel the production of documents regarding Roche is GRANTED-IN-PART. Genentech shall produce any documents required by this order no later than November 28, 2011.

**IT IS SO ORDERED.**

Dated: 11/7/2011

*Paul S. Grewal*
PAUL S. GREWAL
United States Magistrate Judge