UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| GENENTECH, INC., <br><br>　　　　　Plaintiff, <br>　　v. <br><br>THE TRUSTEES OF THE UNIVERSITY OF PENNSYLVANIA, <br><br>　　　　　Defendant. | Case No.: C 10-2037 LHK (PSG) <br><br>**ORDER DENYING PLAINTIFF'S MOTION TO COMPEL RE FERGUSON; ORDER DENYING PLAINTIFF'S MOTION TO COMPEL RE OKUDAIRA** <br><br>**(Re: Docket Nos. 395, 396)** |

In this patent infringement suit, Plaintiff Genentech, Inc. ("Genentech") moves to compel Defendant and Counterclaim-Plaintiff The Trustees of the University of Pennsylvania's ("the University") to respond to two independent sets of discovery requests.[1] The first set of requests relates to former-University scientist Tadao Okudaira ("Okudaira"). Okudaira is a citizen and resident of Japan who has resisted Genentech's attempts to elicit his testimony in this case. The University has retained Okudaira as a consultant and non-testifying expert. Based on its concern that Okudaira's resistance comes at least in part at the University's direction, Genentech moves to compel the University to respond to a number of questions and produce documents relating to

---
[1] A third dispute over the amount of deposition time for a Penn witness on the subject of Penn's Oncolink website, which Genentech's motion re Dr. Ferguson also addresses, has been resolved by the parties. *See* Docket No. 402 (Notice of Partial resolution of Motion re: Topics 11 and 15 of Genentech's Third 30(b)(6) Deposition Notice and Topic 2 of Genentech's Fourth 30(b)(6) notice).

Okudaira's consulting role in this case. The second request relates to University scientist Kathryn Ferguson ("Ferguson"). Ferguson is an Associate Professor of Physiology at the University. Genentech contends that Ferguson's research is relevant to the "competition" question in claim 1 of the asserted United States Patent No. 6,733,752 ("the '752 Patent"), and hence, that Penn must conduct a search of Ferguson's research records and make Ferguson available for deposition.

Having considered the letter briefs, oral argument of November 29, 2011, and evidence presented, the court DENIES the Ferguson motion and DENIES the Okudaira motion.

## I. LEGAL STANDARD

Pursuant to Fed. R. Civ. P. 26(b), parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense. Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence. The court must limit the frequency or extent of discovery if it is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, or the burden or expense of the proposed discovery outweighs its likely benefit.[2]

## II. DISCUSSION

**A.    Motion to Compel Responses Regarding the Okudaira Consulting Arrangement**

Based on the evidence presented, the basic facts surrounding Genentech's attempts to depose or communicate with Okudaira appear to be as follows. In the course of fact discovery, the University identified Okudaira in an interrogatory response and during the deposition testimony of another University scientist as a researcher in the transgenic mouse experiments in the early 1990's reported on in the '752 patent.[3] According to Genentech, Okudaira "played a central role" in the

---

[2] *See* Fed. R. Civ. P. 26.

[3] The parties disagree whether the University's identification of Okudaira in its interrogatory response also constituted a Rule 26 disclosure. In response to Genentech's motion, the University has represented that it will not call Okudaira at trial.

2
Case No.: C 10-2037 LHK (PSG)
ORDER DENYING PLAINTIFF'S MOTIONS TO COMPEL RE FERGUSON AND OKUDAIRA

experiments and was responsible for checking the mice for tumor formation and for recording tumor formation and size.[4] The University does not dispute Okudaira's role in the transgenic mouse experiments, stating at oral argument that Okudaira worked in the "animal room," where he checked the mice for tumor formation and kept logs. In light of this information, in early 2011, Genentech requested production of Okudaira for deposition.[5] In its February 25, 2011 response, the University stated that it had not had contact with Okudaira for several months, that he had been generally difficult to reach, and that the University would continue its attempts to reach him and relay Genentech's request. Counsel for the University further recommended that Genentech take appropriate steps to secure Okudaira's deposition.[6]

Genentech continued trying to reach Okudaira in Japan and eventually succeeded in late August 2011. At that point, Okudaira informed Genentech's counsel through its Tokyo office that he had been instructed by University lawyers not to speak to regarding the litigation between the University and Genentech, but that he would consult with his attorney or colleagues for guidance.[7] Okudaira followed up shortly thereafter and told Genentech's counsel that he could not meet.[8] Okudaira since has not responded to Genentech's further attempts to reinitiate contact.

Genentech sought an explanation from the University and demanded that counsel contact Okudaira and "rescind any prior instruction not to discuss the case."[9] The University responded by attempting to clarify its earlier representations to Genentech and informing Genentech that

---

[4] *See* Docket No. 395 at 1 (citing Docket No 395-1, Ex. B at 46-47, 75-76, 82 (Katsumata Depo.)).

[5] *See* Docket No. 395-1 (High Decl.), Ex. C at 1. Japanese citizens cannot be compelled to attend a deposition in Japan for U.S. court proceedings; it must be done by agreement or not at all. *See generally* Consular Convention and Protocol, U.S.-Japan, art. 17, Mar. 22, 1963, 15 U.S.T. 769.

[6] *See id.*, Ex. D at 1.

[7] *See id.* ¶ 7.

[8] *See id.* ¶¶ 8, 9.

[9] *See id.*, Ex. E.

3
Case No.: C 10-2037 LHK (PSG)
ORDER DENYING PLAINTIFF'S MOTIONS TO COMPEL RE FERGUSON AND OKUDAIRA

Okudaira "is not a testifying expert witness" and had been retained as a paid litigation consultant.[10] The University emphasized that it had never instructed Okudaira not to cooperate, but only instructed him to refrain from revealing communications with counsel regarding the lawsuit.[11] The University also conveyed that in an effort to clear up any misapprehension, it had engaged a translator over the weekend and communicated directly with Okudaira that he was free to speak with Genentech's counsel about his research and work at the University.[12]

Genentech contends that the University's actions have "effectively silenced" Okudaira by hiring him as a non-testifying expert and deciding *not* to call him as a witness at trial, even though the University identified him early on as a person knowledgeable about the facts of the case. Genentech seeks to compel responses from the University to four questions:

1. When did the University conclude its agreement with Okudaira?

2. Is the agreement in writing?

3. How much has the University or University counsel paid Okudaira as a consultant?

4. How many times have employees of the University or University counsel spoken with Okudaira since the suit began, and when specifically since the time that Genentech's counsel sought to speak with Okudaira in August?[13]

Genentech also seeks to compel the production of any documents related to Okudaira, such as consulting agreements and billing records that would reflect communications between counsel and Okudaira. Genentech argues that the questions and documents sought are "covered by multiple

---

[10] *See id.*, Ex. F. Nothing in this retention appears improper. *See, e.g., Synopsys, Inc. v. Ricoh Co. Ltd.*, No. C-0302289 MJJ (EMC), 2006 WL 2458721, at *2 (N.D. Cal. Aug. 22, 2006) ("[I]t is possible for a person to play a dual role in litigation, *i.e.,* serve as a fact witness and as a nontestifying expert."); *cf. Aristocrat Techs. v. Int'l Game Tech.*, No. C-06-3717 RMW, 2010 WL 2486194, at *2 (N.D. Cal. June 15, 2010) (compensating a witness "separately for his consulting services" is not unreasonable).

[11] *See id.*

[12] *See id.*; Docket No. 405-1 ¶ 4.

[13] *See* Docket No. 395 at 2; Docket No. 395-1, Exs. G, H, I.

4
Case No.: C 10-2037 LHK (PSG)
ORDER DENYING PLAINTIFF'S MOTIONS TO COMPEL RE FERGUSON AND OKUDAIRA

discovery requests," including Genentech's Interrogatory No. 10[14] and Request For Production ("RFP") Nos. 38 and 158.[15] Genentech's requests and related questions are in part aimed at eliciting evidence to support an instruction that it an eventually intends to seek from Judge Koh regarding Okudaira's missing testimony.[16]

The University argues that Genentech's four questions, tenuously hitched to two unrelated RFPs and a single interrogatory, are not relevant to any claim or defense in the litigation and thus do not meet the most basic requirements for a discovery request pursuant to Fed. R. Civ. P. 26. According to the University, Interrogatory No. 10 asks about a statement in the patent at issue, not about consulting agreements or anything of the sort sought in this motion. Likewise, RFP No. 38 relates to communications regarding the '752 patent; the University argues that Okudaira was not an inventor of the patent and was never involved in its prosecution. Finally, the University argues that RFP No. 158 is objectionable as a broad "catchall" request, especially insofar as it extends to communications with non-testifying experts.[17]

---

[14] Interrogatory No. 10 asks for information behind the statement in the University's '752 patent describing the rate at which mice remained tumor-free at more than 90 weeks of age. Genentech explains that Okudaira was identified by another University scientist as the person responsible for checking the mice for tumor formation, yet is not mentioned in the University's response to this interrogatory. *See* Docket No. 395-1, Ex. L.

[15] RFP No. 38 asks for documents concerning communications between the University and third-parties "relating to the '752 Patent and/or their Related Patents." Genentech argues that it would cover portions of billing records from counsel to the University revealing the dates and times when University counsel spoke to Okudaira since the beginning of the lawsuit. *See id.*; Docket No. 395-1, Ex. M.

RFP No. 158 asks for "all documents received from any third party related to this litigation." *See* Docket No. 395-1, Ex. K.

[16] *See id.* at 2 ("[A]t the appropriate time, Genentech will seek an instruction from Judge Koh that if Dr. Okudaira had testified he would have given testimony adverse to UPenn on the issue of fraud) (citing *Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 212 (9th Cir. 1988)).

[17] *See* Docket No. 405 at 4 (citing Fed. R. Civ. P. 26(b)(4)(D)).

5
Case No.: C 10-2037 LHK (PSG)
ORDER DENYING PLAINTIFF'S MOTIONS TO COMPEL RE FERGUSON AND OKUDAIRA

Notwithstanding these objections, the University emphasizes that it already has provided to Genentech the substance of the information requested.[18] This includes: all documents concerning Okudaira's research related to the '752 patent that had remained at Penn and could be located, including lab notebooks; a copy of Okudaira's consulting agreement, attached to the University's opposition to this motion; and counsel's sworn declaration confirming that Okudaira has not billed the University nor been paid any consulting fees in connection with this case, and that the University does not intend to call Okudaira as a witness.[19] The University also argues that Genentech's basis for building a record in support of a "missing witness" instruction is flawed, because unlike in *Miller v. Rykoff-Sexton, Inc.*, the University lacks any authority to require or even ask Okudaira to appear for deposition, because Okudaira is not employed by the University[20] and is not being called to testify.[21]

As a result of the University's response to this motion, Genentech thus already has the answers to its first three questions. The Wells Declaration further describes the single conversation that counsel has had with Okudaira since the time that Genentech contacted him, which appears to answer Genentech's fourth question as well.[22] The court finds no basis upon which to order the University to produce further documentation regarding its consulting arrangement or

---

[18] At oral argument, Genentech conceded that most the University's response had satisfied all but its request for documentation reflecting communications between the University and/or University counsel and Okudaira.

[19] *See id.* at 3, 5; Docket No. 405-1 ¶ 3 (Wells Decl.), Ex. 1.

[20] Okudaira, a Japanese citizen and resident of Japan, had not been employed by the University or Dr. Greene's lab for nearly twenty years. *See* Docket No. 405-1 ¶ 6.

[21] *See Miller*, 845 F.2d at 212 (holding missing witness instruction was proper where the party subject to the adverse instruction had agreed to produce the witness, was the witness' employer at that time, and thus "had a measure of control" over him).

[22] *See* Docket No. 405-1 ¶ 4.

6
Case No.: C 10-2037 LHK (PSG)
ORDER DENYING PLAINTIFF'S MOTIONS TO COMPEL RE FERGUSON AND OKUDAIRA

communications with Okudaira.[23] This is especially true where the predicate for the documents requested is to build a record to seek an adverse "missing witness" instruction from the district judge. Genentech has not cited any cases that suggest Okudaira's former position as a University employee and current retention as a non-testifying consultant on the case form a sufficient basis to justify the discovery sought. The discovery requests cited by Genentech similarly do not support an order from the court to produce the desired documents.[24]

Accordingly, the court hereby DENIES Genentech's motion to compel documents reflecting communications between the University or University counsel and Okudaira.

**B.    Motion to Compel Ferguson's Deposition and Related Document Search**

Genentech contends that "Dr. Ferguson has performed research and published on the specific location (*i.e.*, the 'epitope') at which Herceptin binds to the HER2 receptor."[25] Based on this published research, Genentech argues that "Ferguson's laboratory records are likely to contain information that bears directly on the competition question" as between Herceptin and the

---

[23] Genentech does not seek to compel discovery of facts or opinions held by Okudaira pursuant to Fed. R. Civ. P. 26(b)(4)(D). *See* Fed. R. Civ. P. 26(b)(4)(D)(ii) (A party may "discovery facts known or opinions held by an expert … who is not expected to be called as a witness at trial" only "on showing exceptional circumstances under which it is impracticable for the party to obtain facts or opinions on the same subject by other means.").

[24] As the court reads Interrogatory No. 10, the University is required to explain only the "underlying data and basis of the statement" regarding tumor rates in mice at more than 90 weeks of age, as reported in the '752 patent, not to produce communications relating to a consulting agreement established nearly two decades after Okudaira helped conduct the research behind the statement in question. Similarly with respect to RFP No. 38, it is not clear why communications "relating to the '752 Patent and/or their Related Patents" would extend to billing statements – if they existed – or date/time communication logs between the University and Okudaira respecting this litigation. *See* Docket No. 395-1, Exs. L, M. Finally, if the University has received any documents from Okudaira that would be responsive to RFP No. 158, Genentech has not met its burden under the federal rules to show "exceptional circumstances" to justify obtaining information from Okudaira as a non-testifying expert, including records of payments. *See* Fed. R. Civ. P. 26(b)(4)(D)(ii); *Synopsys*, 2006 WL 2458721, at *2 (finding "no real argument" why party seeking the consulting agreement and documents related to payment of services of a non-testifying expert and fact witness would be entitled to those documents).

[25] *See* Docket No. 396 at 1; Docket No. 397, Ex. D.

7
Case No.: C 10-2037 LHK (PSG)
ORDER DENYING PLAINTIFF'S MOTIONS TO COMPEL RE FERGUSON AND OKUDAIRA

University's 7.16.4 antibody.[26] Explaining its position further at oral argument, Genentech refers also to Ferguson's research on the epidermal growth factor receptor ("EGFR") structure and binding mechanisms, her knowledge of which it argues is relevant to what she might know (and has referenced in her publications) regarding the binding of Herceptin to HER2.[27]

According to Genentech, the University agreed to produce Ferguson for deposition but refused to conduct a search of Ferguson's research records for relevant material, agreeing to search for and produce only "experiments involving 7.16.4 or any other Greene laboratory antibodies," to the exclusion of experiments that pertain only to Herceptin, or other potentially relevant documents, such as communications with Greene or others.[28] The University responds that its initial offer to avert this dispute by producing Ferguson for a limited deposition is no longer on the table, principally because it now has confirmed that she has no relevant information that would justify her appearance as a fact witness. The University also contends that Genentech has misapprehended the relevance of Ferguson's research for the claims at issue in this case.

Ferguson's research focus is on EGFR, sometimes referred to as HER1.[29] HER1 and HER2 are different proteins.[30] According to the University, Ferguson has never performed experiments related to "antibody binding to HER2" or to "where traztuzumab binds HER2."[31] The published work that Genentech quotes in its letter brief and in meet-and-confer corresponds with Ferguson's EGFR research, which is unrelated to either Herceptin or the 7.16.4 antibody, or to any antibody

---

[26] *See id.*

[27] Genentech premises the relevance of Ferguson's EGFR research in part on the structural relatedness of EGFR and HER2, both of which belong to the same ErbB protein family.

[28] *See id.*; Docket No. 397 ¶¶ 9, 10 (High Decl.).

[29] *See* Docket No. 403-1 ¶¶ 1, 2 (Ferguson Decl.).

[30] *See id.* ¶ 2.

[31] *See* Docket No. 403 at 2.

8
Case No.: C 10-2037 LHK (PSG)
ORDER DENYING PLAINTIFF'S MOTIONS TO COMPEL RE FERGUSON AND OKUDAIRA

created by the Greene lab or related to development of the '752 patent.[32] Ferguson herself testifies that she has never worked with Herceptin or on experiments related to antibody binding to HER2 or competing for binding to HER2.[33] Although Ferguson has been referenced in funding applications as a collaborator with the Greene lab,[34] and herself offered to provide the Greene lab with crystals of the neu ectodomain (HER2) that she previously had obtained but failed to pursue in her research,[35] there is no evidence that the aborted collaboration and HER2 crystal cultivation efforts resulted in any first-hand knowledge on Ferguson's part that would be relevant to this case.[36]

In one publication cited by Genentech, Ferguson refers to "insights that come from the structural definition of the trastuzumab-epitope on domain IV of ErbB2."[37] Genentech argues that it is entitled to question Ferguson to understand the basis for her knowledge about these "insights." However, the publication quote is taken from a review article in which Ferguson attributes the statement to the work of other named scientists,[38] again undermining Genentech's argument that Ferguson has relevant first-hand knowledge regarding the structure of the HER2 receptor.

---

[32] *See id.*

[33] *See* Docket No. 403-1 ¶ 3 (Ferguson Decl.) (stating that she has never "worked with Herceptin," "conducted or supervised any experiments related to how *any* antibody binds to HER2," "conducted or supervised experiments into how any antibodies may *compete* for binding to HER2," "done or supervised any experiments with any antibodies from the Greene lab at all," or been "involved with any research or experiments that [she] believe[s] resulted in any Greene patent.").

[34] *See* Bates No. UP0243820 (submitted to the court at oral argument).

[35] *See* Bates No. UP278029 (submitted to the court at oral argument).

[36] Genentech does not dispute that the proposed projects were never funded and thus that the collaboration ended with the proposal.

[37] *See* Docket No. 397, Ex. D.

[38] *See* Docket No. 403 at 3. *See also* Docket No. 403-1 ¶¶ 5, 6 ("I have occasionally written or co-authored broad papers or review articles that also refer to HER 2 or Herceptin … [A]ny scientific discussions of Herceptin's properties, binding, or activity in these articles are cited to the work of other researchers, not to my own work.").

9
Case No.: C 10-2037 LHK (PSG)
ORDER DENYING PLAINTIFF'S MOTIONS TO COMPEL RE FERGUSON AND OKUDAIRA

Genentech also points to the fact that one of the University's designated witnesses, Jeffrey Drebin, brought to his 30(b)(6) deposition a binder of publications that he had reviewed, including approximately 30 pages of publications authored by Ferguson.[39] The titles of the articles that Drebin reviewed, however, reflect nothing more than Ferguson's work on EGFR.[40] In short, Genentech has failed to demonstrate the relevance of Ferguson's research, or why production of her laboratory records is reasonably likely to lead to the discovery of admissible evidence.

The University further contends that Genentech seeks to use Ferguson's position as a University employee to obtain her expert opinion under the guise of fact discovery.[41] While this may be overreaching, the court agrees that Ferguson's first-hand knowledge – the only knowledge discoverable to Genentech based on Ferguson's employee status at the University – appears to be centered around her EGFR research and not on any relevant antibodies or mechanism of antibody binding. Whether Ferguson would have an expert opinion regarding similarities in binding mechanisms, or the relevance of her EGFR research to the science underlying this litigation, is not discoverable.[42] In addition, any likely benefit that would stem from the requested discovery does not outweigh the burden on the University or Ferguson, who has explained that she already has

---

[39] *See* Docket No. 397 ¶¶ 5.

[40] *See id.* (listing the following titles of Ferguson's publications included in Dr. Drebin's deposition materials: "A structure-based view of Epidermal Growth Factor Receptor regulation;" "An Open-an-Shut Case? Recent Insights into the Activation of EGF/ErbB Receptors;" "Extracellular domains drive homo- but not hetero-dimerization of erbB receptors;" and "Interaction of antibodies with ErbB receptor extracellular regions.").

[41] *See* Docket No. 403 at 4.

[42] *See, e.g., Dagdagan v. City of Vallejo*, 263 F.R.D. 632, 635-36 (E.D. Cal. 2009) (finding "expert type questions" to be "inappropriate" when asked of party-employee who was not designated as a testifying expert).

10
Case No.: C 10-2037 LHK (PSG)
ORDER DENYING PLAINTIFF'S MOTIONS TO COMPEL RE FERGUSON AND OKUDAIRA

"taken the time to consider if any of my research or writing implicates HER2" and has searched for and provided any writings that summarize that work.[43]

Accordingly, the court DENIES Genentech's motion to compel the production of Ferguson's laboratory and research records, as well as motion to compel Ferguson for deposition.

### III. CONCLUSION

Genentech's motions to compel regarding Ferguson and Okudaira are DENIED.

Dated: 11/30/2011

PAUL S. GREWAL
United States Magistrate Judge

---

[43] *See* Docket No. 403-1 ¶ 7.

11
Case No.: C 10-2037 LHK (PSG)
ORDER DENYING PLAINTIFF'S MOTIONS TO COMPEL RE FERGUSON AND OKUDAIRA