United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| GENENTECH, INC.,<br><br>         Plaintiff,<br>   v.<br><br>THE TRUSTEES OF THE UNIVERSITY OF PENNSYLVANIA,<br><br>         Defendant. | Case No.: C 10-2037 LHK (PSG)<br><br>**ORDER DENYING PLAINTIFF'S MOTION TO STRIKE PORTIONS OF EXPERT REPORTS**<br><br>**(Re: Docket No. 487)** |

In this patent infringement suit, Plaintiff Genentech, Inc. ("Genentech") moves to strike sections of two expert reports offered by Defendant and Counterclaim-Plaintiff The Trustees of the University of Pennsylvania ("the University"). Genentech argues that the University failed to produce certain underlying data considered by the University's expert witness Bryen Jordan ("Jordan") in his opening declaration and relied upon by Stuart Aaronson ("Aaronson") in his expert report. Genentech argues that the omitted material should have been produced pursuant to Fed. R. Civ. P. 26(a)(2)(B)(ii), and that the University's omissions prejudiced Genentech's ability to examine Jordan effectively during his deposition by testing the bases for his opinions. In effect, Genentech seeks to preclude testimony based on those portions of the Jordan declaration and Aaronson report that relate to the omitted material.

The University responds that the material sought by Genentech largely consists of drafts, notes, and preparatory materials generated by the expert that are not discoverable by agreement of the parties. In the attempt to avoid motion practice, the University contends that it nevertheless produced most of the information before Genentech filed its motion. The parties appeared for hearing on March 6, 2012. For the reasons below, the court DENIES the motion to strike.

**I. DISCUSSION**

Absent an agreement otherwise, Fed. R. Civ. P. 26(a)(2)(B)(ii) mandates the production of "the facts or data considered by the [expert] witness in forming" his opinions. Courts have read the term "considered" to include information that an expert reviews or generates, "regardless of whether the experts actually rely on those materials as a basis for their opinions."[1] Pursuant to Fed. R. Civ. P. 37(c), a party failing to disclose information required under Rule 26(a) may not introduce that information at trial, unless the failure was substantially justified or is harmless. The court also can impose appropriate sanctions, including striking the offending material from the pleadings.[2]

Here, Genentech and the University stipulated in writing that "[w]ith regard to expert reports, the parties agree that drafts of expert reports, notes and other preparatory materials generated by the expert, and communications with experts that do not form a basis of the expert's opinions, are not discoverable."[3] As the party seeking relief, it is Genentech's burden to demonstrate that the University violated an obligation to produce the material that Genentech claims is missing, justifying the request to strike significant sections of the Jordan declaration and

---

[1] *See S.E.C. v. Reyes*, No. C. 06-4435 CRB, 2007 WL 963422, at *1 (N.D. Cal. Mar. 30, 2007) (citing *Reg. Airport Auth. of Louisville v. LFG, LLC*, 460 F.3d 697, 715 (6th Cir.2006); *In re Pioneer Hi-Bred Int'l*, 238 F.3d 1370, 1375 (Fed.Cir.2001); *United States v. City of Torrance*, 163 F.R.D. 590, 593-94 (C.D.Cal.1995)). *See also In re Google Adwords Litigation*, No. C08-3369 JW (HRL), 2010 WL 518738, at *2 (N.D. Cal. Dec. 8, 2010); *Allstate Ins. Co. v. Electrolux Home Prods.*, No. 09 C 6379, 2012 WL 13512, at *5-6 (N.D. Ill. Jan. 4, 2012) (holding that the broad emphasis on disclosure under Fed. R. Civ. P. 26, including materials "considered" and not merely "relied on" provides notice to the opposing party and allows effective preparation for cross-examination) (citing *Fid. Nat'l Title Ins. Co. of N.Y. v. Intercounty Nat'l Title Ins. Co.*, 412 F.3d 745, 751 (7th Cir. 2005)).

[2] Fed. R. Civ. P. 37.

[3] Docket No. 18 at 4 (Joint Case Management Statement).

2
Case No.: C 10-2037 LHK (PSG)
ORDER DENYING MOTION TO STRIKE PORTIONS OF EXPERT REPORTS

Aaronson expert report.[4] The court addresses in turn each omission that Genentech argues serves as a basis for its request.

**A.     ELISA Experiments**

According to Genentech, Jordan performed three "ELISA" experiments on competition for binding between the 7.16.4 and Herceptin antibodies, but in his declaration presented the results of only one of those experiments. The two omitted experiments purportedly showed a result of non-competition between the antibodies, in contrast with the third experiment that supported Jordan's conclusion that the antibodies compete for binding on HER2. In order to effectively examine Jordan regarding his decision to omit the two experiments, Genentech sought Jordan's statistical analysis of the experimental results, as well as the protocol descriptions used. The University produced some of these experimental records on January 14, 2012, before Jordan's deposition, but Genentech contends that three of the Excel files were unreadable "temp" files[5] and that the University never produced the original files related to the temp files or confirmed that the original files no longer existed.[6] Genentech also contends that the experimental protocol actually used by Jordan is not the same protocol that is detailed in his declaration,[7] and that the University did not produce the other protocols or allow Jordan to answer questions about them during his deposition.

The University responds that it previously produced all of the data upon which Jordan relied, including his statistical analysis,[8] and that the "temp" files contain no data and are merely an automatically-generated artifact of Jordan having saved and renamed three files.[9] Moreover, the

---

[4] Genentech seeks to strike Figure 6 and related paragraphs 37-64 of the Jordan Declaration, entitled "ELISA Experiments Demonstrate that 7.16.4 and Herceptin Specifically Bind to HER2 and Compete for Binding to HER2," and the corresponding paragraphs 86-110, 171, and 183 of the Aaronson opening report. Genentech also seeks to strike paragraphs 15-36 of the Jordan Declaration, entitled "Biacore Experiments Demonstrate that 7.16.4 and Herceptin Both Bind to the Same Epitope at Domain IV of HER2," and the corresponding paragraphs 91, 103, 138-40, and 184, of Aaronson's expert report.

[5] Docket No. 487 (Pl.'s Mot. to Strike), Exs. C-F.

[6] Docket No. 488-1 ¶ 15 (Kushan Decl.).

[7] Docket No. 487, Ex. K 63:2-65:20, 153:23-155:15, 341:3-344:11(Jordan Depo.).

[8] Docket No. 511 at 2 (Def.'s Opp'n to Mot. to Strike); Docket No. 512 ¶ 2 (Haberny Decl.).

[9] Docket No. 513 ¶¶ 2-6 (Jordan 3rd. Decl.).

3
Case No.: C 10-2037 LHK (PSG)
ORDER DENYING MOTION TO STRIKE PORTIONS OF EXPERT REPORTS

University argues that it did not need to produce data related to the two experiments not included in Jordan's declaration, because those were preliminary experiments used to optimize conditions and not relied upon by Jordan in arriving at his declaration.[10] Instead, the protocol used in the relevant experiments was described in detail in Jordan's first declaration and was the subject of extensive review by Genentech during Jordan's deposition. The University also argues that Genentech has mischaracterized Jordan's statements in contending that the protocol produced was not the same that he followed.[11]

Having reviewed at length the materials submitted by the parties, including Jordan's declarations and the deposition transcript excerpted by each side, the court is not persuaded that the University failed in any obligation to produce material related to the ELISA experiments. If any such failure occurred, it is not so substantial as to justify the harsh sanction sought by Genentech. First, Genentech has presented no evidence to substantiate its claim that it is missing key statistical data. Although Genentech argues that none of the documents it received explain how Jordan did his statistical calculations or contain the formulas for the statistical analysis, Genentech asked Jordan at his deposition for an explanation and, upon receiving one, did not press the issue or suggest that it was missing information it needed.[12] Moreover, the University has consistently represented that the unreadable Excel files do not contain substantive data, and that the statistical basis for Jordan's analysis of his experimental data was produced earlier as JORDAN0000045, 47, and 61.[13] Genentech offers no reason to suggest these representations are false.

---

[10] Docket No. 513 ¶¶ 17-19.

[11] Docket No. 511 at 4.

[12] Docket No. 487, Ex. K 48:16-49:10 (Q: And how did you [generate those statistical analyses]? A: That's just a standards T test on using Excel. I looked at the three data points – or this is, I believe, six data points for each point determining the starting binding, that is, how much of the labeled antibody is binding to the total HER2 on the plate, and then how much it decreases and whether or not that decrease is statistically significant. Q: Okay. So you did that calculation just with Excel? A: I did that calculation with Excel. Q: And did you give the file – the Excel files to your lawyers? A: Yes, they should be somewhere. Q: Okay.")

[13] Docket No. 513 ¶ 9 (confirming that the "entire set of data upon which the ELISA experiments included in my First and Second Declarations were based, and upon which my opinions relating to the ELISA experiments reflected in my First and Second Declarations are based" have been provided to Genentech).

4
Case No.: C 10-2037 LHK (PSG)
ORDER DENYING MOTION TO STRIKE PORTIONS OF EXPERT REPORTS

As to the University's non-production of protocols that were used during the omitted ELISA runs, Genentech has not demonstrated that these experiments formed any part of Jordan's opinions as expressed in his declaration.[14] The protocol descriptions might fall within the broad scope of Fed. R. Civ. P. 26(a)(2)(B)(ii) as "facts or data considered" because Jordan created them in the course of considering his final experimental method. Genentech does not offer, however, an explanation as to how the protocol descriptions developed during the earlier iterations of Jordan's experiments fall outside of the parties' agreement regarding preparatory materials that do not form a basis of the expert's opinions. Jordan is transparent that he did not include in his declaration those protocols for earlier ELISA assays because he considered them to be part of the optimization process – that of "determining conditions that worked."[15] He states that those protocol did not form the basis for his opinions.[16] Furthermore, Genentech has the actual data that resulted from Jordan's experiments,[17] as well as Jordan's statements at his deposition regarding the discrepancy between the number of concentrations of antibody to be tested according to the protocol and the number actually tested.[18] This number was well known to Genentech because Figure 6 of Jordan's declaration sets forth how many concentrations were tested.

In sum, Genentech has not demonstrated that the University's production of Jordan's experimental data was incomplete, or that the University was obligated to produce additional information related to protocols that did not form the basis for the experimental run upon which Jordan relies in his declaration. Genentech's motion to strike Figure 6 and paragraphs 37-64 of Jordan's declaration, and paragraphs 86-110, 171, and 183 of the Aaronson report is therefore DENIED.

---

[14] Jordan's third declaration, submitted in response to this motion, expressly states that he exchanged drafts of the protocol description with counsel for the University and that "[t]hese drafts did not form a basis for any opinion in my report." Docket No. 513 ¶ 19.

[15] *See* Docket No. 487, Ex. K 341:2-342:5; Docket No. 513 ¶ 17.

[16] Docket No. 513 ¶ 17; Docket No. 511 at 4-5.

[17] Docket No. 513 ¶¶ 15-17.

[18] Docket No. 487, Ex. K 63:2-65:20.

Case No.: C 10-2037 LHK (PSG)
ORDER DENYING MOTION TO STRIKE PORTIONS OF EXPERT REPORTS

### B.  Biacore Experiments

Following the ELISA experiments, Jordan used a "Biacore" instrument system to test the binding of 7.16.4 and Herceptin antibodies to a particular site on HER2. Genentech argues that Jordan discarded key records from his Biacore experiments, without which Genentech was unable to verify whether certain results presented by Jordan in his declaration correlated to which of the two antibodies and under what conditions.[19] These records comprise handwritten notes that Jordan and his technician generated to track which samples were being tested at a particular time on the Biacore instrument. In addition, Genentech argues that it has been unable to examine Jordan and Aaronson's statements at deposition regarding the quality or suitability of certain batches of reagents use in the Biacore experiments because the University never produced records of the antibody batches that were used.

The University responds that Jordan consistently transferred the information in his handwritten notes to his electronic files, which were produced in full.[20] The University also points out that although it did produce Jordan's notes electronically, it was under no obligation to do so under the parties' agreement not to produce "notes and other preparatory materials."  Regarding the source or batch of the reagents used in the Biacore experiments, the University affirms that both the Jordan declaration and the Aaronson report provide the identity of the source of the antibodies used in the experiments as well as the reference code used by the supplier.[21] The University also argues that Genentech's belated request for receipts for the antibodies that Jordan used – almost seven weeks after it received the Jordan declaration and two weeks after Jordan's deposition – belies any argument that the receipts constitute "key records" or would help Genentech assess the quality of the antigens. This is especially true given that Genentech's expert scientists used the same 7.16.4 antibody from the same source.[22] The University further points out that in response to

---

[19] Docket No. 487 at 4.

[20] Docket No. 513 ¶¶ 10, 12-14.

[21] Docket No. 512, Ex. 6 ¶ 94 (Aaronson Report), Ex. 7 ¶¶ 17, 39 (Jordan 1st Decl.).

[22] *See* Docket No. 511 at 3-4.

6
Case No.: C 10-2037 LHK (PSG)
ORDER DENYING MOTION TO STRIKE PORTIONS OF EXPERT REPORTS

this motion, it proposed a mutual exchange of receipts of antibody purchases by each side, to which Genentech declined.[23]

The court is not persuaded that either of the alleged omissions has prejudiced Genentech's ability to examine the data generated by Jordan's Biacore experiments. Genentech has not disputed the University's representations that all of the information in Jordan's handwritten notes was in fact transferred and produced electronically. Although Genentech would like to access lab notes that might facilitate its cross examination of Jordan regarding the graphs in his declaration and whether they correlate to the antibodies stated, Genentech previously agreed to the non-production of just such notes. Genentech thus has not demonstrated why the failure to preserve Jordan's written notes merits any sanction.

Regarding purchase records of the antibodies used, Genentech similarly has not demonstrated that those records should have been produced in the first instance or that their non-production prejudiced Genentech in its expert examinations. Jordan and Aaronson reference in their deposition testimony the fact that certain runs on the Biacore machine were affected by the quality of the antibody or possible interference caused by the buffer in which the antibody was suspended.[24] Their respective declaration and report provide the source information for all of the antibody material used in the experiments, and the University has confirmed that no other sources were used. To the extent that Genentech seeks to challenge the reliability of the experimental results presented in Jordan's declaration and considered by Aaronson for his report, it is unclear how purchase receipts or records of the particular batch of antibody used would add anything further to the deposition testimony and to the experimental results already on the record.

Because Genentech has not demonstrated that the University's non-production of Jordan's handwritten notes or of purchase records from the antigen source was in violation of a discovery obligation or prevented Genentech from effectively examining the University's experts, Genentech's motion to strike paragraphs 15-36 of Jordan's declaration, and paragraphs 91, 103, 138 to 140, and 184 of the Aaronson report is also DENIED.

---

[23] Docket No. 512, Exs. 2, 3 (email exchange between counsel: 2/28/2012, 2/29/2012).

[24] Docket No. 487, Ex. K 330:22-334:13; *Id.*, Ex. S 146:5-149:24 (Aaronson Depo. Rough Tr.).

7

Case No.: C 10-2037 LHK (PSG)
ORDER DENYING MOTION TO STRIKE PORTIONS OF EXPERT REPORTS

## II. CONCLUSION

The University did not withhold any key information in regard to the Jordan declaration and subsequent deposition. The information that Genentech claims was necessary was either provided, not discoverable by agreement of the parties, or not proven to be prejudicial. Genentech's motion to strike is DENIED.

Dated: 3/15/2012

_____
PAUL S. GREWAL
United States Magistrate Judge